**UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO**

S & J TRUCKING CO.,

        Plaintiff,

v.                                                   CIV 05-208 ACT/DJS

JOE DAVIDSON, DAVIDSON OIL
COMPANY d/b/a FLYING STAR
TRANSPORT, LLC, a Texas corporation,

        Defendant.

**PLAINTIFF'S PROPOSED FINDINGS OF FACT, CONCLUSIONS OF LAW
AND TRIAL MEMORANDUM**

Pursuant to the Initial Pre-Trial Report, Plaintiff S & J Trucking, Co., by and through counsel of record, respectfully submits Plaintiff's Proposed Findings of Fact and Conclusions of Law. Additionally, pursuant to the Court's oral instructions at the Pre-Trial Scheduling Conference, Plaintiff also submits its Trial Memorandum. For ease of reference, Plaintiff submits the Trial Memorandum together with the Proposed Findings of Fact and Conclusions of Law.

**I.    THE PARTIES**

Plaintiff, S & J Trucking Co., is a New Mexico Corporation, based in Raton, New Mexico, owned by Steve Webster S & J Trucking Co., which at all material times, was engaged in the business of transporting fuel and other chemicals.

Defendant, Davidson Oil Company, is a Texas Corporation based in Amarillo, Texas. Davidson Oil Company is in the business of wholesaling fuel. Davidson Oil Company has a wholly owned subsidiary called Flying Star Transportation that is in the business of

transporting fuel, and now that Flying Star breached the Non-Compete Agreement, is a competitor of S & J Trucking Co. Joe T. Davidson is the President and majority stock holder of Davidson Oil Co.

## II. STATEMENT OF THE CASE

Defendants signed a Non-Disclosure and Non-Compete Agreement in February of 2000 under the guise of making an offer to purchase either the stock or assets of S & J Trucking Co. Though Defendants made a low offer that was not accepted by S & J Trucking Co, Defendants breached the Non-Compete portion of the Agreement by subsequently conducting, and to this day conducting, business with S & J customers. The Non-Compete Agreement provides for liquidated damages in the amount of $250,000.00 plus attorneys fees for the non-breaching party.

## III. PLAINTIFF'S PROPOSED FINDINGS OF FACT

1. During his vacation in Colorado, Defendant Joe Davidson saw several fuel transportation trucks belonging to S & J Trucking. As he saw the S & J trucks throughout Colorado, Mr. Davidson made inquiries as to where S & J Trucking was located and the type of transportation services offered by S & J Trucking.

2. After some initial conversations, Joe Davidson decided that Davidson Oil/Flying Star would make an offer to purchase either the stock or the assets of S & J Trucking.

3. On or about February 21, 2000, both Steve Webster and Joe Davidson signed the Non-Disclosure and Non-Compete Agreement. *See* February 21, 2000

Non-Disclosure and Non-Compete Agreement (the "Agreement") (Plaintiff's Exhibit 1).

4. Concerned about providing his financial information and customer information to another company, Mr. Webster took reasonable steps to protect the business interests of S & J Trucking, Co.

5. Mr. Webster contacted an attorney, and after consultation, determined that $250,000.00 was a reasonable amount to compensate his company if Defendants were to breach the agreement.

6. The Agreement provides:

> Whereas it is necessary for Davidson to examine certain business records of S & J prior to making a proposal to purchase **and the parties desire to protect the business interest of S & J in the event that Davidson does not purchase the stock or assets of S & J.**
>
> Now therefore the parties agree as follows:
>
> * * *
>
> 2.  In consideration for the agreement by S & J to allow Davidson to inspect certain business records of S & J., Davidson agrees that none of the information obtained by Davidson from the records of S & J or the fact that S & J is considering a sale of its business shall be disclosed by Davidson **and none of such information shall be used by Davidson for the purpose of competing with S & J in the established trade of S & J.**
>
> 3.  Davidson covenants and agrees that **it shall not engage in the trucking or oil or gas delivery business** to current S & J customers for a period of ten years from the date of this agreement.
>
> 4.  The parties have agreed that a breach of the terms of their agreement by Davidson would result in immediate, substantial and irreparable harm and damage to S & J and that a **reasonable amount of [sic] compensate to S & J for such breach is the sum of $250,000.00.** Therefore, should Davidson substantially and materially breach the terms of this

>agreement, Davidson agrees immediately upon demand to pay to S & J the sum of $250,000.00 in liquidated damages.

Plaintiff's Exhibit 1, ¶¶ 2, 3, and 4 (emphasis added).

7. The Agreement further provides that in the event of default, the "non defaulting" party shall have the right to recover attorney's fees and costs incurred in enforcing the terms of this agreement. *Id.*

8. Finally, the Agreement contains an integration clause making clear that this is the entire agreement and neither party shall be bound by any other promise or representation. *Id.*

9. After securing Mr. Davidson's signature to the Non-Disclosure and Non-Compete Agreement, Mr. Webster began providing financial information to Mr. Davidson for his consideration. Included in that information was S & J Trucking's: (i) customer list; (ii) rates charged to each customer by destination; (iii) gross monthly sales for each customer; (iv) the volume purchased by each customer; and (v) S & J's balance sheets and net revenues for each year. This information was provided in a three-ring binder, and at the request of Davidson Oil, was supplemented through facsimile transmission. *See* Plaintiff's Exhibits 2, 3, 4, 5, 6, 7, 8, 9 and 10.

10. In the ten months prior to the signing of the Agreement, the revenues of S & J Trucking derived from Ferrell Gas were approximately $150,000.00.

11. After Davidson Oil had an opportunity to review the information, a meeting took place in Raton, New Mexico, wherein Davidson offered to purchase the assets of S & J for approximately $1.2 million dollars.

12. This offer was rejected by S & J Trucking Co.

13. In late 2004, Davidson Oil purchased the LP gas tanks from S & J Trucking. They did not purchase any of the tractors or other equipment.

14. At the time of the purchase between Davidson and S & J, Mr. Webster had leased his trucks and tanks to a company called Andrews Transport for insurance purposes. Under the leasing arrangement with Andrews Transport, customers would call S & J Trucking and S & J Trucking would then dispatch Andrews Transport, with S & J Trucking receiving a percentage of the revenue based on the fact that Andrews was leasing the equipment from S & J Trucking.

15. Prior to S & J's sale of the tanks to Davidson Oil, Mr. Webster made arrangements with Andrews Transport to lease up to eight tankers from Andrews to continue servicing S & J customers.

16. Defendants admit that they were doing business with a customer of S & J – in 2003 -- **prior** to purchasing the tanks.

17. Pursuant to the Non-Compete Agreement, Davidson Oil agreed not to conduct any business with the customers of S & J for a period of ten years.

18. Davidson Oil admits to conducting business with at least one of the customers, Ferrell Gas.

19. In 2004 alone, Davidson Oil billed Ferrell Gas $56,505.00 for propane deliveries in New Mexico.

20. Defendants are in breach of the Agreement.

IV.   **LEGAL CLAIMS**

The Complaint contains two straightforward causes of action: (i) Breach of the Non-Compete Agreement and (ii) tortious interference.

In short, Defendants agreed not engage in any trade or business in competition with S & J Trucking Co. for a period of ten years. Three years into the Agreement, Defendants breached the terms of the Agreement and began conducting business with at least one of S & J Trucking Co.'s customers – Ferrell Gas. In the ten months prior to S & J Trucking providing its financial information to Defendants, the Ferrell Gas account generated $150,477.16 of S & J Trucking's revenues. Indeed, Ferrell Gas was one of S & J Trucking's two largest propane customers. Not only did S & J Trucking provide the total revenues by customer, but S & J further provided Defendants with each customer's contact information and billing rates. Clearly, the breach is material.

In establishing what a "material" breach is, the New Mexico Court of Appeals has recognized:

> Some courts have described a material breach as the "failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract." . . . Put another way, a material breach "is one which touches the fundamental purpose of the contract and defeats the object of the parties in entering into the contract." . . . Other courts have noted that a material breach occurs when there is a breach of "an essential and inducing feature of the contract."

*Famigleitta v. Ivie-Miller Enterprises, Inc.*, 126 N.M. 69, 74, 966 P.2d 777, 782 (Ct. App. 1998)(citations omitted). In the present case, the very nature of the Agreement is to protect the business interests of S & J Trucking and to prevent Defendants from engaging in competition with S & J Trucking. In the present case, materiality is evident by the nature of the breach – conducting business in competition with plaintiff in direct contravention of the express terms of the Agreement.

While Defendants have sought to amend their answer to now assert affirmative defenses of ambiguity, public policy and privilege, the Court has not yet ruled on whether Defendants may raise these issues at trial. In any event, Defendants initially denied breaching the Agreement by conducting business with any of S & J's customers. The undisputed facts, however, clearly demonstrate that the Agreement has been breached.

At trial, Defendants are expected to present two defenses: (i) the Agreement excluded LP Gas (propane); and (ii) Mr. Webster informed Defendants that they could breach the Agreement. Each of these defenses is contradicted by Defendants' own testimony. A summary of Defendants' testimony is provided herein.

### A. Davidson Oil's claim that the Non-Compete Agreement excluded LP gas is without merit.

- The Agreement specifically provides that Davidson Oil, "shall not engage in the trucking or oil or gas delivery business." Simply calling LP gas "propane" does not exclude LP gas from the agreement.

- The Agreement in a separate paragraph further provides that, "none of such information shall be used by Davidson for the purpose of competing with S & J in the established trade of S & J." Davidson clearly knew that the "established trade" of S & J was the hauling of LP gas.

- Davidson Oil was negotiating the purchase of S & J Trucking as a whole and did not exclude LP gas from the purchase offer.

Factually, this defense is contradicted by the testimony of Defendants. Specifically, after Davidson Oil had an opportunity to review the information, a meeting took place in Raton, New Mexico, wherein Davidson offered to purchase the assets of S & J for approximately $1.2 million dollars. It should be noted that this was a verbal offer and Mr. Davidson and his own Chief Financial Officer, Kevin Carrier, disagree over the terms of the offer and what the offer included and did not include. For example, Mr.

Davidson is adamant that the offer to purchase the assets of S & J Trucking did not include any of the equipment associated with LP gas (propane) or any of the LP gas customers. Indeed, in his deposition, Mr. Davidson testified:

> We did not go up there to purchase any propane on the first agreement at all because we weren't even in the business. We didn't know how to do it. So all we were talking about was buying his gasoline rigs and his --- he had some rigs, I think, that he could haul lube oil in. And that's all we ever talked about.

Deposition of Joe Davidson, pp. 32-33, lines 19-25 and 1. When asked: "So when you were having the discussions with S & J Trucking, at all times it excluded propane? ANSWER: Yes, sir." *Id.*, p. 33, lines 18-20.

> Q:   Now, this offer that you made at two times earnings, did the earnings include the propane business or no?
> A:   Two times earnings would be based on what his earnings were. I would assume – we can ask Mr. Carrier, but I would assume that would be just on the fuel and lubricants that he hauled, because that's the only thing we were familiar with. We wouldn't even know how to base a profit and loss on propane because we weren't in the propane business.
> Q:   So just so I understand accurately what your testimony is, is that the two times earnings was limited solely to fuel and lubricants and did not include propane?
> A:   Yes, sir.

*Id.*, p. 34, lines 1-15.

In other words, Mr. Davidson's testimony is suspect as the offer had to have included the LP gas revenue to support an offer of $1.2 million. (S & J's 2001 net revenues were approximately $504,000.00 – accordingly, 2x would amount to slightly more than $1 million). This testimony is significant as one of the two reasons Mr. Davidson argues that he is not in breach of the Non-Compete Agreement is that the Agreement is not applicable to LP gas customers. However, Mr. Carrier admitted that the $1.2 million dollar offer included all of S & J's LP gas equipment and customers. *See*

deposition of Kevin Carrier: ("It's been a period of time, but to the best of my recollection, the negotiations for the purchase of S & J in 2000 did include propane assets.") (Carrier Deposition, p. 3, lines 4-6).

In any event, the offer was insufficient and Mr. Webster turned it down. While there are some minor disagreements between the parties as to the course of events over the next several years, it is undisputed that in late 2004, Davidson Oil purchased the LP gas tanks from S & J Trucking. They did not purchase any of the tractors or other equipment. It is in connection with the purchase of these eight pieces of LP gas equipment that Davidson has based his second defense, namely, that Mr. Webster specifically told Mr. Davidson that S & J Trucking was getting out of the LP gas transportation business and accordingly Davidson Oil did not violate the Non-Compete Agreement on the grounds that S & J was no longer conducting that portion of its business.

**B.      Davidson Oil's defense that Mr. Webster's getting out of the LP gas delivery business excuses the breach is also without merit.**

- The corroborating testimony of Andrews Transport establishes that S & J was still in the LP gas delivery business after the limited sale of eight pieces of equipment. Indeed, S & J Trucking kept the tractors used to pull the trailers and leased the tractors to Andrews Transport. S & J further continued to receive orders from its clients and service its clients' needs.

According to the expected testimony of Mr. Davidson, Mr. Webster contacted him after the tragic death of his wife and the automobile accident involving both of his sons and told Mr. Davidson that S & J could no longer handle the LP gas business and he really needed help selling this equipment. Mr. Davidson further testified that Mr. Webster told him that if Davidson Oil would help him with this purchase that S & J

would give Davidson a deal on the rest of the business. Mr. Davidson's use of Mr. Webster's personal tragedies as a basis for his defense as to why he is allowed to breach the Non-Compete Agreement is not only offensive but completely inaccurate.

While Mr. Davidson professes that Davidson Oil was not interested in the LP gas business, prior to the purchase of S & J's eight tanks, Davidson Oil had purchased at least one other LP gas transporter and was developing LP gas accounts in West Texas. It was Davidson Oil that contacted Mr. Webster about the proposed purchase. Indeed, at the time of the purchase between Davidson and S & J, Mr. Webster had leased his trucks and tanks to a company called Andrews Transport for insurance purposes. Under the leasing arrangement with Andrews Transport, customers would call S & J Trucking and S & J Trucking would then dispatch Andrews Transport, with S & J Trucking receiving a percentage of the revenue based on the fact that Andrews was leasing the equipment from S & J Trucking. In other words, S & J Trucking was able to meet its customers' demands.

Mr. Davidson's version of events is further refuted by the testimony of Greg Pohlmeier, the Leasing Manager for Andrews Transport. Mr. Pohlmeier will testify – consistent with Mr. Webster – that prior to S & J's sale of the tanks to Davidson Oil, Mr. Webster made arrangements with Andrews Transport to lease up to eight tankers from Andrews to continue servicing S & J customers. This conversation took place prior to the sale of the tankers to Davidson Oil. Clearly, there is no veracity to Mr. Davidson's suggestions that Mr. Webster was getting out of the business, and accordingly, this defense has no merit.

Additionally, Mr. Carrier admits that they were doing business with a customer of S & J **prior** to even purchasing the tanks. *See* Carrier Deposition: ("Q: And I thought you told me this morning that you didn't start hauling propane for Ferrell until after you obtained the tanks from S & J Trucking. A: We were doing a few loads prior to – in 2004, prior to purchasing the tanks.") *Id.,* p. 21, lines 23-25; p. 22, lines 1-2. In fact, Mr. Carrier admitted that Davidson Oil was hauling propane loads for Ferrell Gas even in 2003. *Id.*, lines 14-23. Finally, Mr. Webster will testify that he never told Mr. Davidson that he could have S & J Trucking's clients.

>   **C.   Even if this Court were to Allow Defendants To Amend Their Answer to Raise the Affirmative Defenses that the Agreement is ambiguous and against Public Policy, Defendants are unable to meet their burden of proof.**

Considering efforts to avoid a liquidated damages clause, the New Mexico Supreme Court has determined:

> There would seem to be no sound reason why persons competent and free to contract may not agree on the amount of liquidated damages for failure to complete a contract within a specified time to the same extent as they may contract on any other subject . . . .

*Gruschus v. C.R. Davis Contracting Co.*, 75 N.M. 649, 655, 409 P.2d 500, 506 (1965)(citations omitted). In the present case, the parties agreed – in advance – on the amount of the liquidated damages amount in the event that Defendants breached the Agreement. If this Court were to allow the Defendants' proposed amended answer, Defendants would bear the burden of proof that the amount is against public policy. *See e.g., Honey Dew Associates, Inc. v. M & K Food Corp. et al.*, 241 F.3d 23, 27 (1st Cir. 2001)("Our search of the treatises and academic literature leads us to the conclusion that the prevailing rule is that the party challenging the enforceability of a liquidated damages

clause has the burden of proving that it is a penalty."); *Pav-Saver Corp. v. Vasso Corp.*, 143 Ill. App. 3d 1013, 1019, 493 N.E.2d 423, 427 (3d Dist. 1986)("[T]he burden of proving that a liquidated damages clause is void as a penalty rests with the party resisting its enforcement.").

In the present case, Defendants are unable to meet this burden as the amount is reasonable. In determining whether the amount is reasonable or a penalty, courts determine reasonableness at either the time the contract was entered into or at the time of the breach. *See Restatement (Second) of Contracts* § 356 comment b. (the reasonableness of the amount set in a liquidated damages clause is to be looked at as of the time of contracting and at the time of actual breach. If at either time the estimate is reasonable, the clause will be enforced.)

In the present case, it is unclear why Defendants would purport to assert that the amount is unreasonable – Plaintiff has had no advance knowledge as to this defense and accordingly, is unaware of the reasons Defendants would advance that the amount is a penalty. Indeed, the intent of the Agreement was to protect S & J Trucking in the event that there was a breach. Three years into a ten year agreement, Defendants engaged with at least one of S & J's customers that in the ten months preceding the Agreement generated revenues of approximately $150,000.00, or over 10% of the company's gross revenue in one year – not to mention the ongoing breach to date with four years left under the Agreement. In other words, looking at the parties' intent: (i) Mr. Davidson signed the Agreement; and (ii) there is no basis to argue that the Agreement was unreasonable at the time the Agreement was entered into since the amount of the liquidated damages

clause was not disproportionate to the amount of damages that could be suffered by S & J Trucking in the event of a breach.

### D. Punitive Damages are Appropriate for Defendant's Willful, Bad Faith, Breach of Contract

Punitive damages are appropriate in breach of contract cases in New Mexico upon a showing that the "conduct of the wrongdoer [is] maliciously intentional, fraudulent, oppressive, or committed recklessly or with a wanton disregard to the plaintiffs' rights" *Hood v. Fulkerson,* 102 N.M. 677, 680, 699 P.2d 608, 611 (1985). More specifically, punitive damages are "predicated on a showing of bad faith, or at least a showing that the breaching party acted with reckless disregard for the interests of the nonbreaching party." *Paiz v. State Farm*, 118 N.M. 203, 880 p.2d 300 (1994).

The actions of Davidson Oil, through its subsidiary, show a clear breach of the contract between the parties. The terms of the contract include an explicit requirement that Davidson is not to engage in business with any of S & J's customers, for the term of the contract. Davidson Oil has been doing business with one of S & J's customers, Ferrell Gas, for at least the last three years and continues to do business with Ferrell Gas.

Davidson Oil's breach of the contract must necessarily be intentional. Certainly, it would be folly for Davidson Oil to claim that they are mistakenly doing business with a company that happens to have accounted for over ten percent of S & J's business. Much less a company about which Davidson Oil learned directly from the records disclosed to it by S & J.

Further, Davidson Oil's usurpation of S & J's customer can be seen as nothing other than a bad faith breach. Davidson Oil learned of Ferrell Gas' needs from the information provided by S & J. This is exactly the information sought to be protected by

the contract.  Also, Davidson Oil was aware of the prohibition against doing business with S & J's customers in general, and Ferrell Gas in particular.  Clearly, the actions of Davidson Oil not only constituted direct competition with S & J, but were completed with reckless disregard for S & J's interests, and in direct contravention of those interests, as specifically stated in the contract.

In sum, the actions of Davidson Oil in doing business with Ferrell Gas, despite the express terms of the written agreement between the parties, can be seen as nothing but willfully achieved.  Additionally, the breach was completed in bad faith with a full recognition of the fact that it was in direct conflict with the interests of S & J.  Given the nature of the breach, S & J is entitled to a determination of punitive damages for Davidson Oil's maliciously intentional, oppressive, and reckless breach of contract performed with a wanton disregard to S & J's rights.

**IV.    PLAINTIFF'S PROPOSED CONCLUSIONS OF LAW**

1. This Court has jurisdiction of the parties and subject matter of this litigation.
2. Defendants breached the Agreement.
3. The liquidated damages set forth in the Agreement is not unreasonable so as to be void as against public policy.
4. Plaintiff is entitled to $250,000.00 in liquidated damages, plus pre-judgment and post-judgment interest.
5. Defendants' breach was willful and in bad faith entitling Plaintiff to punitive damages.
6. Plaintiff is entitled to recover attorneys' fees and costs.

Respectfully submitted,

KELLEY-STREUBEL LLC

_____
Cody K. Kelley
315 5th Street NW
Albuquerque, NM 87102-2105
(505) 848-8581
(505) 848-8593 fax

Attorneys for Plaintiff S&J Trucking Co.

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of this document was served via facsimile transmission this 23rd day of January, 2006, to opposing counsel as listed:

> Tim D. Newsom
> Lovell, Lovell, Newsom & Isern, L.L.P.
> Eagle Centre Building
> 112 West 8th Avenue, Suite 1000
> Amarillo, Texas 79101-2314
> *Attorney for Defendants*

KELLEY-STREUBEL LLC

_____
Cody K. Kelley
315 Fifth Street N.W.
Albuquerque, N.M. 87102
(505) 848-8581