UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

| | |
|---|---|
| S & J TRUCKING CO., § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIV 05-208 ACT/DJS |
| § | |
| JOE DAVIDSON, DAVIDSON OIL § | |
| COMPANY d/b/a FLYING STAR § | |
| TRANSPORT, LLC, a Texas corporation, § | |
| § | |
| Defendants. § | |

**DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

TO THE HONORABLE ALAN C. TORGERSON:

Defendants JOE DAVIDSON and DAVIDSON OIL COMPANY d/b/a FLYING STAR TRANSPORT, LLC, file this their Proposed Findings of Fact and Conclusions of Law:

**FINDINGS OF FACT**

**A.   Jurisdiction and Venue.**

1. Plaintiff is a citizen and resident of New Mexico. Defendants are citizens and residents of Texas. The amount in controversy is in excess of $75,000.

2. The agreement which is the subject of this lawsuit was executed and performable in the State of New Mexico.

**B.   Background Facts.**

3. On February 21, 2000, S&J Trucking, Joe Davidson, and Davidson Oil Company (collectively "Davidson") executed a document entitled "Non Disclosure and Non Compete Agreement." (the "Agreement").

4. Stephen Webster is President of S&J Trucking. Mr. Webster signed the Agreement

as President of S&J.

5. Joe Davidson is President of Davidson Oil Company. Mr. Davidson signed the Agreement in his individual capacity and as President of Davidson Oil.

6. The Agreement was entered by the parties for the purpose of allowing Davidson to inspect the business records of S&J while Davidson contemplated purchasing S&J's stock or assets.

7. The Agreement stated "it is necessary for Davidson to examine certain business records of S&J prior to making a proposal to purchase and the parties desire to protect the business interest of S&J in the event that Davidson does not purchase the stock or assets of S&J."

8. The Agreement further stated Davidson shall not use any confidential S&J business information for the purpose of competing with S&J in the oil and gas delivery business for a ten year period.

9. The Agreement further stated that in the event Davidson "materially and substantially" breaches the Agreement, then Davidson should pay liquidated damages of $250,000 and attorney's fees to S&J.

10. After reviewing the financial information in 2000, Davidson declined to make any offer to purchase stock or assets of S&J.

11. In July 2003 and December 2003, S&J leased four of its eight propane tankers to the Andrews Transport terminal in Amarillo, Texas. The remaining four propane tankers remained parked in the S&J yard in Raton. S&J chose to enter the Andrews lease, because it could not afford the minimum liability insurance requirements for propane hauls in New Mexico. Under the Andrews lease, Andrews employed the drivers, paid the liability insurance, and directed and controlled the propane hauls. S&J received only a percentage fee for use of the propane tankers.

12. S&J ceased to be in the propane hauling business when it leased the propane tankers

to Andrews Transport.

13. Between February 2000 and August 2004, and before Davidson bought the S&J propane tankers, Davidson hauled propane for S&J customers on a minimal basis at the request of the customer, Davidson was hired by S&J as a subcontractor to haul propane for S&J's customers, and Davidson had knowledge that Andrews was using several of S&J's propane tankers.

14. On August 26, 2004, Davidson purchased the eight propane tankers from S&J for $200,000. Four of the propane tankers were located at S&J's business place in Raton, New Mexico where Davidson picked up the units. Four of the propane tankers were still on lease to Andrews where Davidson picked up the units.

15. The eight propane tankers constituted all of the propane equipment owned by S&J, which it sold to Davidson.

16. After Davidson's purchase of the propane tankers, Davidson spent approximately $67,000.00 in repairs on the tankers to make them roadworthy and compliant with New Mexico regulations.

17. Since S&J was no longer in the propane business and had requested Davidson to take care of its former propane customers at the time Davidson purchased the propane tankers, Davidson did haul propane for a former S&J customer following Davidson's purchase of the propane tankers. The hauls by Davidson returned a de minimis net profit to Davidson.

18. S&J leased tractors, not propane tankers, to Andrews Transport following the Davidson purchase. Like the previous lease arrangement, S&J just provided the equipment (a tractor) and received a fee for the hauls. Andrews provided the propane tanker. Andrews also employed the drivers, paid the liability insurance, and directed and controlled the propane hauls. Finally, Andrews received the dispatch calls for the loads, and directed the pickup and delivery of

those loads. Davidson was unaware of this Andrews/S&J lease arrangement, which was never disclosed to Davidson until Mr. Webster's deposition was taken in this case.

19.   In October 2004, there were further negotiations between S&J and Davidson pertaining to Davidson's purchase of S&J's remaining assets. No agreement was reached.

20.   In November 2004, Davidson purchased all of the assets of Bob Balch Trucking Company located in Tucumcari, New Mexico.

### C.   Breach of Contract Claim Against Davidson.

21.   Davidson did not breach the Agreement.

22.   Davidson did not use any confidential S&J business information to compete with S&J.

23.   The Agreement by its terms only applies in the event Davidson did not purchase the stock or assets of S&J. Davidson did purchase the propane assets of S&J. Therefore, the Agreement did not prohibit Davidson from hauling propane for S&J customers.

24.   The Agreement did not contemplate "propane gas". Therefore, the Agreement did not prohibit Davidson from hauling propane for S&J customers.

25.   Davidson did not materially and substantially breach the Agreement.

26.   Davidson made very low net profits for the propane hauls.

27.   There continued to be a high demand for propane hauls, which S&J could have performed had S&J been in the propane hauling business.

28.   S&J failed to sustain its burden of proof that Davidson competed with S&J.

29.   S&J failed to sustain its burden of proof that Davidson's alleged breach was material and substantial.

30.   S&J waived its rights to complain about Davidson's conduct in hauling propane for

S&J customers, because S&J encouraged Davidson to take care of its propane customers when Davidson purchased the propane tankers, on which Davidson relied.

31.     S&J is estopped from claiming Davidson violated the Agreement by hauling propane for S&J customers, because S&J encouraged Davidson to take care of its propane customers once Davidson purchased the propane tankers, on which Davidson relied.

32.     S&J is not entitled to recover damages for its claims of Davidson's breach of the Agreement.

### D.     Tortious Interference Claims Against Davidson.

33.     Davidson did not tortiously interfere with any existing contract between S&J and S&J's customers.

34.     There was no written contract between S&J and any of its customers. S&J was only on call on an "as-needed" basis.

35.     Davidson did not have knowledge of a contract between S&J and its customers. There is no evidence Davidson caused any S&J customer to refuse performance of any contract. Nor did Davidson play an active and substantial role in causing S&J to lose the benefits of any claimed contract. Finally, there is no evidence that S&J suffered damages caused by Davidson.

36.     Davidson did not tortiously interfere with any prospective customer relations between S&J and its prospective customers.

37.     There is no evidence that Davidson improperly prevented any of S&J's customer from hiring S&J to haul oil, gas, or propane from them.

38.     There is no evidence that Davidson improperly interfered with S&J's contractual relations, either through improper means or improper motive.

**E.     Declaratory Findings.**

39.     The Agreement does not prohibit Davidson from hauling propane for any customer.

40.     The Agreement does not prohibit Davidson from hauling propane in any geographic location.

41.     The Agreement does not prohibit Davidson from engaging in any business with customers of Bob Balch Trucking.

**F.     Damages.**

42.     S&J has failed to prove at least one element of its claims.

43.     S&J is not entitled to recover actual damages.

44.     S&J is not entitled to recover liquidated damages.

45.     Davidson's conduct was not malicious, wanton, or willful.

46.     S&J is not entitled to recover punitive damages.

47.     Davidson is entitled to recover reasonable and necessary attorney's fees as follows: (a) $_____ for pretrial and trial preparation, (b) $_____ for post-trial motions, © $_____ for an appeal to the Tenth Circuit Court of Appeals in the event an appeal is taken, and (d) $_____ for an appeal to the United States Supreme Court in the event an appeal is taken to that court.

## Conclusions of Law

48.     This court has personal jurisdiction over the parties and subject matter jurisdiction of this cause pursuant to 28 U.S.C. § 1332(a)(1).

49.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(a).

50.     The Agreement is ambiguous to the extent of the term "gas" and whether that term includes "propane gas", "l.p. gas", or "propane."

51. Liquidated damages against Davidson are inappropriate since any damage to S&J was calculable. The liquidated damages clause in the Agreement therefore constitutes a penalty, and is unenforceable.

52. S&J shall take nothing by its claims against Davidson.

53. Davidson is entitled to recover reasonable and necessary attorney's fees pursuant to 28 U.S.C. §§ 2201, 2202.

54. Davidson shall recover from S&J reasonable and necessary attorney's fees as follows: (a) $_____ for pretrial and trial preparation, (b) $_____ for post-trial motions, © $_____ for an appeal to the Tenth Circuit Court of Appeals in the event an appeal is taken, and (d) $_____ for an appeal to the United States Supreme Court in the event an appeal is taken to that court.

55. Davidson is entitled to recover its taxable costs of court.

SIGNED this the _____ day of _____, 2006.

_____
HONORABLE ALAN C. TORGERSON
UNITED STATES MAGISTRATE JUDGE

                      Respectfully submitted,

                      LOVELL, LOVELL, NEWSOM & ISERN, L.L.P.
                      Tim Newsom, State Bar No. 16886
                      Kevin A. Isern, Texas Bar No. 10432900
                      Eagle Centre Building
                      112 West 8th Avenue, Suite 1000
                      Amarillo, Texas 79101-2314
                      Telephone: (806) 373-1515
                      Facsimile: (806) 379-7176
                      Email: tnewsom@arn.net

                      By:   Electronically Filed on January 23, 2006
                          Tim Newsom
                          State Bar No. 16886

                      **ATTORNEYS FOR DEFENDANTS**

I hereby certify that on this 23rd day of January, 2006, a true and correct copy of the foregoing pleading was mailed to all counsel of record, as follows:

| | |
|---|---|
| William C. Marchiondo, Esq.<br>Marchiondo Law Offices, P.C.<br>315 Fifth Street NW<br>Albuquerque, New Mexico 87102 | _____Hand Delivery<br>_____Certified Mail, RRR<br>_____Facsimile<br>   X   Regular Mail<br>_____Email |
| -and- | |
| Cody K. Kelley, Esq.<br>Kelley, Streubel & Mortimer, LLC<br>315 Fifth Street NW<br>Albuquerque, New Mexico 87102 | _____Hand Delivery<br>_____Certified Mail, RRR<br>   X   Facsimile<br>   X   Regular Mail<br>   X   Email |

**ATTORNEYS FOR PLAINTIFF**

                        /s/ Tim Newsom
                      Tim Newsom